UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

  MODESTO JUNIOR GONZALEZ,

                    Plaintiff,              **MEMORANDUM & ORDER**
                                              20-CV-2384(EK)

                    -against-

  COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

------------------------------------x
ERIC KOMITEE, United States District Judge:

          Plaintiff Modesto Junior Gonzalez challenges the

Social Security Administration's denial of his claim for

disability insurance benefits.  Before the Court are the

parties' cross-motions for judgment on the pleadings.  For the

following reasons, I grant the Commissioner's motion and deny

Plaintiff's.

## I.  Background

## A.  Procedural Background

          On August 24, 2016, Gonzalez applied for disability

benefits and supplemental security income, alleging a disability

onset date of December 12, 2014.  Administrative Tr. ("Tr.") 11,

ECF No. 12.  The agency denied his claims.  *Id.*  On November 13,

2018, an administrative law judge ("ALJ") held a hearing on

Gonzalez's claim.  *Id.*  The ALJ concluded that Gonzalez was not

disabled and therefore not entitled to disability benefits.  Tr.

23.   The Appeals Council denied Gonzalez's request for review of the ALJ's decision, rendering it final.  Tr. 1.  Gonzalez timely sought review in this Court.

**B.   The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims.  20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity.  *Id.* § 404.1520(a)(4)(i), (b).  If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities."  *Id.* § 404.1520(c).  If the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments").  *Id.* § 404.1520(d); 20 C.F.R. pt. 404, subpt. P,

app. 1.  If it does, the ALJ will deem the applicant disabled.

20 C.F.R. § 404.1520(a)(4)(iii).

Here, the ALJ determined that Gonzalez had not engaged in substantial gainful activity since his alleged onset date. Tr. 14.  The ALJ also determined that Gonzalez suffered from the "severe impairments" of degenerative arthritis of the hips and left elbow; degenerative disc disease of the lumbar spine; and clinical obesity.  *Id.*  However, the ALJ also determined that none of these severe impairments rose to the level of a Listed Impairment.  Tr. 15.

When an ALJ finds that the claimant's severe impairments do not meet the requirements of the Listings, she must determine the claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding his limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ concluded here that Gonzalez had the RFC to perform "sedentary work," albeit with significant limitations.  Tr. 15.  Those limitations included that he "can only stand and/or walk for a total of just 2 hours per 8-hour workday," that "with his non-dominant left upper extremity, he can only frequently reach, handle, finger, grasp, turn, and twist," and "he can only occasionally climb."  Tr. 15–16.

At step four, the ALJ considered whether, in light of the RFC determination, the claimant could perform "past relevant

work." 20 C.F.R. § 404.1520(f). Here, the ALJ found that Gonzalez could not return to his past work in construction. Tr. 21-22. At step five, the ALJ evaluates whether the claimant could perform jobs existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). The ALJ determined that Gonzalez could perform certain such jobs, including as a table worker and a touch-up inspector. Tr. 22.[1] Given that conclusion, the ALJ concluded that Gonzalez was not disabled. Tr. 23.

## II.  Standard of Review

A district court has jurisdiction to review the Commissioner's final judgment denying an application for disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).[2]

---

[1] A "table worker" "[e]xamines squares (tiles) of felt-based linoleum material passing along on [a] conveyor and replaces missing and substandard tiles." *739.687-182 Table Worker*, *Dictionary of Occupational Titles* (4th ed. 1991), 1991 WL 680217. A "touch-up inspector" "[i]nspects printed circuit board (PCB) assemblies for defects, such as missing or damaged components, loose connections, or defective solder." *726.684-110 Touch-up Screener, Printed Circuit Board Assembly*, *Dictionary of Occupational Titles*, *supra*, 1991 WL 679616.

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).  "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive."  42 U.S.C. § 405(g).

### III.  Discussion

Plaintiff raises three arguments on appeal.  First, he argues that the ALJ erred in denying his request for a second consultative examination.  Second, he argues that the ALJ's RFC determination failed to account for limitations resulting from his need for a cane.  Finally, he asserts that the RFC determination was unsupported by substantial evidence.

### A.   Need for Second Consultative Examination

Gonzalez argues that the ALJ erroneously denied his request for a second consultative examination.  Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem.") 15–16.[3] The ALJ committed no error, however, as Gonzalez has shown no basis on which a second examination was required.

---

[3] Although Gonzalez raised this argument in his memorandum accompanying his motion for judgment on the pleadings, he did not further address this contention in his reply brief, suggesting he may have abandoned it upon reviewing the Commissioner's response.  However, because he raised the issue it in his initial brief, I address it here nonetheless.

In his decision, the ALJ noted that he had considered Gonzalez's counsel's request, made during the hearing, for a second consultative examination to evaluate Gonzalez's conditions.  Tr. 11.  Counsel had based that request on the "relatively old" age of the first consultative examination and its "relatively undetailed" nature.  Tr. 43.  The ALJ denied that request because he had received "current post-hearing evidence from Community Healthcare, which provides clinical examination findings regarding, *inter alia*, the claimant's gait and motor strength."  *Id.*  Accordingly, the ALJ decided that "no further consultative examination is required in this instance." *Id.*

"A consultative examination is used to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow the ALJ to make a determination or decision on the claim."  *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013).  "It can be reversible error for an ALJ not to order a consultative examination when an examination is required for an informed decision.  However, an ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it."  *Id.* "Moreover, consultative examinations do not have expiration dates, and an additional examination is not warranted without evidence that the claimant's condition deteriorated during the

period at issue." *Stephanie M. v. Comm'r of Soc. Sec.*, No. 21-CV-2123, 2022 WL 2733441, at *4 (S.D.N.Y. May 13, 2022), *report and recommendation adopted sub nom. McLean v. Comm'r of Soc. Sec.*, No. 21-CV-2123, 2022 WL 2733518 (S.D.N.Y. June 1, 2022).

Here, Gonzalez has not alleged that his condition deteriorated after the 2016 consultative examination, nor has he pointed to any unresolved inconsistency in the record that would have required a second examination to reconcile.  As discussed below, the record contained sufficient evidence for the ALJ to make a determination on the claim, including as to Gonzalez's RFC.  Thus, the ALJ did not err in declining to order a second consultative examination.

**B.   Medical Necessity of a Cane**

Gonzalez next objects that the ALJ did not analyze Gonzalez's need for a cane and did not include such need as a limitation in the RFC.  Pl. Mem. 18–19.  But substantial evidence supports the ALJ's conclusion that Gonzalez had not shown the medical necessity of a cane.  *See* Tr. 20.  Social Security Ruling 96-9p sets forth the standard for determining whether a cane or other handheld assistive device is medically necessary:

> To find that a handheld assistive device is medically
> required, there must be medical documentation
> establishing the need for a hand-held assistive device
> to aid in walking or standing, and describing the
> circumstances for which it is needed (i.e., whether

all the time, periodically, or only in certain
situations; distance and terrain; and any other
relevant information).

61 Fed. Reg. 34,478, 34,482 (July 2, 1996).  Where a plaintiff

"has failed to establish that his assistive device was

'medically required' under the explicit terms of SSR 96-9p,"

"the ALJ d[oes] not err by excluding it from his residual

functional capacity determination."  *Smith v. Colvin*, No. 12-CV-

1098, 2015 WL 3970932, at *9 (W.D.N.Y. June 30, 2015).

Here, the ALJ considered explicitly whether Gonzalez

medically required a cane:

Lastly, while the claimant did use a cane on August
16, 2018, he had a normal gait while doing so, and
previously had not used a cane during the November
2016 orthopedic consultative examination.  As such, I
have not incorporated the medical necessity for a
hand-held assistive device into the above residual
functional capacity assessment (SSR 96-9p), even
though I have considered his physical pain in reducing
his maximum residual capacity to within the sedentary
exertional level.

Tr. 20 (citing Tr. 249-55, 429-30).  This summary is consistent

with the evidence (and the lack thereof).  Gonzalez cited

medical records *reporting* his use of a cane, but no medical

professional opined that a cane was necessary, and Gonzalez has

not argued that the cane was prescribed.  Where "no treating

source [has] opined that the claimant required [a cane] to

ambulate and neither did a consultative examiner," and where the

claimant did not identify the physician who purportedly

prescribed the cane or "point[] to any part of the record that contains the necessary medical documentation for a cane," the ALJ is not required to account for the use of a cane in the RFC determination. *Lamont v. Comm'r of Soc. Sec.*, No. 20-CV-4581, 2021 WL 5084060, at *2 (E.D.N.Y. Nov. 2, 2021); *see also Podolsky v. Colvin*, No. 12-CV-6544, 2013 WL 5372536, at *16 (S.D.N.Y. Sept. 26, 2013) (where no treating physician prescribed or recommended the use of a cane, the ALJ did not err in finding no medical necessity), *report and recommendation adopted*, Memorandum & Order, No. 12-CV-6544 (S.D.N.Y. Mar. 31, 2014), ECF No. 25.  Moreover, the record reflected that Gonzalez could walk without the cane.  As the ALJ observed, during the November 4, 2016 orthopedic examination, Gonzalez "ambulat[ed] with a limping gait" but "[u]sed no assistive device."  Tr. 250—51.

Moreover, Gonzalez has not established that the record contains the documentation required by SSR 96-9p.  "SSR 96-9p does not require that a hand-held assistive device be prescribed to be considered medically necessary, but it does require specific medical documentation establishing its need and circumstances surrounding its need."  *Valentine v. Comm'r of Soc. Sec.*, No. 18-CV-3985, 2019 WL 3974576, at *17 (E.D.N.Y. Aug. 21, 2019).  This gap is fatal to Gonzalez's argument.  As one district court explained, even if a plaintiff requires a

cane at times, "the unskilled sedentary occupational base will not ordinarily be significantly eroded" if "there is no evidence she required it at all times, and if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes." *Miller v. Astrue*, 538 F. Supp. 2d 641, 651 (S.D.N.Y. 2008). Accordingly, the ALJ did not err in declining to include a cane in Gonzalez's RFC.

## C.    The ALJ's RFC Determination

Finally, Gonzalez challenges the ALJ's determination that he has the RFC to perform sedentary work (with limitations, as set forth above), and therefore can work as a table worker or a touch-up inspector, as unsupported by substantial evidence. Pl. Mem. 18.

The Social Security Regulations define "sedentary work" as that "involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  *Id.*

In determining that Gonzalez had the RFC to perform
such work, the ALJ relied primarily on a consultative evaluation
performed by Dr. Chaim Shtock, a physical medicine and
rehabilitation specialist, in November 2016.  Tr. 20-21; *see* Tr.
249-53.  Shtock made numerous findings, including that Gonzalez
ambulated with a "limping" gait, that he "had difficulty walking
on heels and toes," that he was "[u]nable to squat beyond 80%
maximum capacity," and that he did not use any assistive
devices.  Tr. 250-51.  As to Gonzalez's left lower extremity,
Shtock noted left hip flexion of 95 degrees, internal rotation
of 10 degrees, and external rotation 5 degrees; full range of
motion in his knee and ankle joints; and muscle strength of 4+/5
in the proximal and 5/5 in the distal muscles."  Tr. 251.  On
this basis, Shtock opined that Gonzalez has "mild limitation"
with heavy lifting, squatting, kneeling, standing long periods,
and sitting long periods; "no limitation" with squatting,
frequent bending, and performing overhead activities using both
arms; "mild to moderate limitation" with frequent stair
climbing, walking long distances, and "mild limitation using the
left hand for gross motor activity due to deformity and
tenderness in the left hand, first carpometacarpal joint."  Tr.
252.

Gonzalez argues that this opinion is insufficiently
specific to support the ALJ's determination regarding his

ability to perform sedentary work.  Pl. Mem. 18.  Although he
does not cite the case, the Second Circuit held in *Curry v.
Apfel* that the "use of the terms 'moderate' and 'mild,' without
additional information, does not permit the ALJ, a layperson
notwithstanding her considerable and constant exposure to
medical evidence, to make the necessary inference that [a
plaintiff] can perform the exertional requirements of sedentary
work."  209 F.3d 117, 123 (2d Cir. 2000).

But Shtock's opinion was not without additional
information.  On the contrary, he provided three pages of
additional information (including objective medical findings and
results from two x-rays) underpinning his conclusion.  Tr. 249–
52.  "Courts have found *Curry* to be inapplicable where, as here,
the consultative examiner conducts a thorough examination and
explains the basis for the opinion."  *Martin v. Comm'r of Soc.
Sec.*, No. 19-CV-406, 2020 WL 3547042, at *2 (W.D.N.Y. June 30,
2020); *see also Quintana v. Berryhill*, No. 18-CV-0561, 2019 WL
1254663, at *17 (S.D.N.Y. Mar. 19, 2019) (Parker, M.J.)
("[C]ourts in this district have held that a medical source's
use of the terms 'mild' or 'moderate' to describe a claimant's
impairments does not automatically render their opinion vague as
long as the opinion contains objective medical findings to
support their conclusion."); *Tudor v. Comm'r of Soc. Sec.*, No.
12-CV-2795, 2013 WL 4500754, at *12 (E.D.N.Y. Aug. 21, 2013)

("[T]he mere use of the phrase 'moderate limitations' does not render a doctor's opinion vague or non-substantial for purposes of the ALJ's RFC determination.").

Gonzalez also objects to the ALJ's not having discussed the opinion of Colette Russen, a treating nurse practitioner. Russen opined that Gonzalez "has limited endurance and mobility which restrict the amount of stairs and walking he can accomplish." Tr. 332. But the ALJ did not err in declining to discuss this opinion. First, under the treating physician rule in effect at that time, nurse practitioners were not "acceptable medical sources" who could provide medical opinions that an ALJ is required to consider. *See Wider v. Colvin*, 245 F. Supp. 3d 381, 389 (E.D.N.Y. 2017) ("[S]ince nurse practitioners are not listed as 'acceptable medical sources,' they cannot be 'treating sources,' and cannot even give 'medical opinions.' ALJs only have to evaluate and weigh 'medical opinions.'"). Second, Russen's opinion was, in any event, consistent with the ALJ's RFC, which limited Gonzalez to walking two hours out of an 8-hour workday and climbing only "occasionally." Tr. 15.

Finally, Gonzalez argues that the ALJ failed to "assess [his] work-related abilities on a function-by-function basis" before reaching an RFC determination "expressed in terms of exertional levels of work," such as sedentary work, as

required by Social Security Ruling 96-8p.  61 Fed. Reg. 34,474, 34,475 (July 2, 1996).  Physical functional abilities include "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)."  20 C.F.R. § 404.1545(b).

Here, the ALJ's RFC determination *was* expressed on a function-by-function basis:

> [Gonzalez] can lift and/or carry 10 pounds occasionally, 5 pounds frequently.  He can sit, with normal breaks, for a total of 6 hours per 8-hour workday, but can only stand and/or walk for a total of just 2 hours per 8-hour workday.  Further, in terms of manipulative limitations, with his non-dominant left upper extremity, he can only frequently reach, handle, finger, grasp, turn, and twist.  Lastly, in terms of postural limitations, he can only occasionally climb.

Tr. 15.

Gonzalez objects more specifically to the ALJ's failure to assess his ability to perform tasks involving "stooping, bending and balancing," arguing that he "likely has difficulty" performing these actions.  Pl. Mem. 19.  In particular, he cites Social Security Ruling 96-9p, which states:

> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations.  A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work.

61 Fed. Reg. at 34,482.

But Gonzalez has not identified any evidence in the medical record to support the existence of such difficulties. On the contrary, Shtock opined in his consultative examination report that Gonzalez "has no other physical functional deficits" other than those he identified (and that were set forth above). Tr. 252.  And in particular, Shtock reported that Gonzalez had no apparent problems with head and neck movements necessary to stooping, indicating that as to Gonzalez's cervical spine, he demonstrated "[f]ull flexion, extension, lateral flexion, and rotary movements bilaterally," with "[n]o cervical or paracervical pain or spasm" and "[n]o trigger points."  Tr. 251. Thus, the ALJ did not err in omitting these limitations from Gonzalez's RFC determination, which was supported by substantial evidence.

## IV.  Conclusion

For these reasons, the Commissioner's motion for judgment on the pleadings is granted, and Gonzalez's motion is denied.

SO ORDERED.


_____/s/ Eric Komitee_____
ERIC KOMITEE
United States District Judge


Dated:    February 28, 2023
          Brooklyn, New York